**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| **EDGEWOOD MANAGEMENT CORP.,** D/B/A PRATUM COMPANIES<br><br>Plaintiff<br><br>v.<br><br>**LEE ZIEBEN, ZG REAL ESTATE HOLDINGS, LTD., ZG REAL ESTATE MANAGEMENT GROUP, LLC, SQUIRE COURT PARTNERS, LTD., GALR, LLC, PECAN ACQUISITION, LLC, HEARTLAND VILLAGE, LTD., PINE LAKE ESTATES, LP, TXNMA, LP, GULF COAST ARMS, LTD., MSTV LLC, OKRWV, LP KS ELM STREET APARTMENTS, LP, TXAN, LP, TXNRM, LLP, EASTWOOD TERRACE AND OAKHILL PLAZA, TXCVA, LP, TXUG, LP, TXLS, LP, TXVW, LP, TXIMA, LP, TXMA, LP, & TXPHV, LP**<br><br>Defendants. | Case No: 3:26-cv-00913 |

**COMPLAINT**

Edgewood Management Corporation D/B/A Pratum Companies ("Pratum"), by and through its undersigned counsel, hereby files this Complaint for monetary damages and such other relief as the Court deems appropriate, and in support thereof, avers as follows:

NATURE OF THE ACTION

1. This matter arises out of Defendants' breaches of contract and tortious conduct that significantly damages Pratum, which serves as a property manager for a portfolio of twenty residential properties owned directly or indirectly by Lee Zieben ("Zieben") through his web of corporate entities. Pratum is a well-respected property management company, leading the industry

for over fifty years and operating across the country. Pratum's business model develops lasting partnerships, not only with property owners, but with the vendors and contractors it utilizes in order to run properties smoothly for owners and tenants alike, thereby sustaining fruitful long-term relationships for all involved.

2. In early 2025, Defendants solicited Pratum to take over property management duties for their portfolio and entered into contracts for each individual property as terms were reached throughout the year. During the course of Pratum's service as property manager, it identified that Defendants frequently diverted large amounts of funds from property operating accounts, typically leaving them without available balances to cover even basic expenses, such as payroll obligations for the on-site employees. Defendants' explanations for these transactions were vague, inconsistent, and conflicted with available records for the properties. Beyond violating the Parties' contracts, the pattern of these transfers violates federal law, state law, and government regulations, constituting RICO violations.

3. This financial mismanagement, coupled with other contractual violations by Defendants, led to a breakdown in the relationship. Defendants notified Pratum that they intended to turn over property management services to a new company. When Defendants terminated the contracts, they refused to pay the funds owed to Pratum thereunder. Defendants' misconduct caused substantial financial harm to Pratum both through direct nonpayment of money due to it from Defendants and from the third-party liability they exposed Pratum to from nonpayment of vendors. Moreover, Defendants' conduct caused significant reputational harm to Pratum, which affected its relationship with its own employees, vendors, and ultimately other property owners it contracted with for management services or sought to secure business opportunities with.

PARTIES

4. Edgewood Management Corporation is a company incorporated in Maryland with its principal place of business located at 9711 Washingtonian Blvd., Suite 200, Gaithersburg, MD 20878 with a registered D/B/A name of Pratum Companies. It is authorized to do business in states across the country as a property management company, including in Texas.

5. Lee Zieben is a resident of the city of Houston in the State of Texas at 7219 Raton St, Houston, TX 77055. He is the managing member and ultimate owner – directly or indirectly – of numerous companies that serve as residential housing providers in Texas and other nearby states which contracted with Pratum for property management services. For purposes of clarity, the companies that Zieben exercises direct or indirect control over are those identified in here in paragraphs 3 through 24, and are collectively referred to as the "Zieben Defendants."

6. ZG Real Estate Holdings, Ltd. is a company incorporated in Texas with its principal place of business located at 1980 Post Oak Blvd., Suite 2020, Houston, TX 77056, with the registered agent Corporation Service Company, located at 211 E. 7th Street, Suite 620, Austin, TX 78701. It owns various companies that serve as residential housing providers in Texas and other nearby states which contracted with Pratum for property management services.

7. ZG Real Estate Management Group, LLC is a company incorporated in Texas with its principal place of business located at 211 E. 7th Street, Suite 620, Austin, TX 78701, with the registered agent Corporation Service Company, located at 211 E. 7th Street, Suite 620, Austin, TX 78701. It oversees business operations for various companies that serve as residential housing providers in Texas and other nearby states which contracted with Pratum for property management services. Upon information and belief, having researched publicly available filings and records

for ZG Real Estate Management Group, LLC, its members are citizens of the State of Texas and the company has no contacts with the State of Maryland, where Pratum is a citizen.

8. Squire Court Partners Ltd. is a company incorporated in Arkansas with its principal place of business located at 1980 Post Oak Blvd., Suite 2020, Houston, TX 77056, with the registered agent Corporation Service Company located at 300 S. Spring Street, Suite 900, Little Rock, AR 72201. It owns a rental property identified as Summit at Geyer Springs, located at 5201 Geyer Springs Rd., Little Rock, AR 72209 and contracted with Pratum for property management services. *See* Geyer Springs Management Contract attached as Exhibit 1.

9. GALR LLC is a company incorporated in Texas with its principal place of business located at 1980 Post Oak Blvd., Suite 2020, Houston, TX 77056, with the registered agent Corporation Service Company located at 211 E. 7th Street, Suite 620, Austin, TX 78701. It owns a rental property identified as Summit at Valley Heights, located at 5000 Summertree Dr., North Little Rock, AR 72116, and contracted with Pratum for property management services. *See* Valley Heights Management Contract attached as Exhibit 2. Upon information and belief, having researched publicly available filings and records for GALR, LLC, its members are citizens of the State of Texas and the company has no contacts with the State of Maryland, where Pratum is a citizen.

10. Pecan Acquisition, LLC is a company incorporated in New York with its principal place of business located at 6 Greene Street, Suite 500, New York, NY 10013. It owns a rental property identified as Pecan Village Apartments, located at 310 University Street, Wharton, TX 77488, and contracted with Pratum for property management services. *See* Pecan Village Management Contract attached as Exhibit 3. To operate in Texas, it maintains a registered agent Corporation Service Company, located at 211 E. 7th Street, Suite 620, Austin, TX 78701. Upon information

and belief, having researched publicly available filings and records for Pecan Acquisition, LLC, its members are citizens of the State of Texas and the company has no contacts with the State of Maryland, where Pratum is a citizen.

11. Heartland Village, Ltd. is a company incorporated in Texas with its principal place of business located at 1101 S. Capital of Texas Highway, Building F, Suite 200, Austin, TX 78746, with the registered agent Corporation Service Company, located at 211 E. 7th Street, Suite 620, Austin, TX 78701. It owns a rental property identified as Summit at Heartland Village, located at 847 Wildcat Way, Sulphur Springs, TX 75482, and contracted with Pratum for property management services. *See* Summit at Heartland Village Management Contract attached as Exhibit 4.

12. Pine Lake Estates, LP is a company incorporated in California with its principal place of business located at 3450 Wilshire Blvd., #910, Los Angeles, CA 99910 with the registered agent Homer Swindler located at 2001 Bryan Tower #605, Dallas, TX 75201. It owns a rental property identified as Summit Pine Lake Estates located at 2012 Durst Road, Nacogdoches, TX 75964, and contracted with Pratum for property management services. *See* Pine Lake Management Contract attached as Exhibit 5. Upon information and belief, having researched publicly available filings and records for Pine Lake Estates, LP, its partners are citizens of the State of Texas and the company has no contacts with the State of Maryland, where Pratum is a citizen.

13. TXNMA, LP is a company incorporated in Texas with its principal place of business located at 1980 Post Oak Blvd., Suite 2020, Houston, TX 77056, with the registered agent Corporation Service Company, located at 211 E. 7th Street, Suite 620, Austin, TX 78701. It owns a rental property identified as Summit at North MacGregor Arms Apartments, located at 3533 N. MacGregor, Houston, TX 77004, and contracted with Pratum for property management services.

*See* Summit at North MacGregor Arms Management Contract attached as Exhibit 6. Upon information and belief, having researched publicly available filings and records for TXNMA, LP, its partners are citizens of the State of Texas and the company has no contacts with the State of Maryland, where Pratum is a citizen.

14. Gulf Coast Arms, Ltd. is a company incorporated in Texas with its principal place of business located at 4643 Devon Street, Houston, TX 77027, with the registered agent Corporation Service Company, located at 211 E. 7th Street, Suite 620, Austin, TX 78701. It owns a rental property identified as Summit at Hirsch Road, located at 6603 Hirsch Road, Houston, TX 77026, and contracted with Pratum for property management services. *See* Summit at Hirsch Road Management Contract attached as Exhibit 7.

15. MSTV, LLC is a company incorporated in Mississippi with its principal place of business located at 1980 Post Oak Blvd., Suite 2020, Houston, TX 77056 with the registered agent Corporation Service Company, located at 211 E. 7th Street, Suite 620, Austin, TX 78701. It owns a rental property identified as Summit at the Village Apartments, located at 2015 Mosby Road, Meridian, MS 39307, and contracted with Pratum for property management services. *See* Summit at the Village Apartments Management Contract attached as Exhibit 8. Upon information and belief, having researched publicly available filings and records for MSTV, LLC, its members are citizens of the State of Texas and the company has no contacts with the State of Maryland, where Pratum is a citizen.

16. OKRWV, LP is a company incorporated in Oklahoma with its principal place of business located at 905 N Rockwell, Oklahoma City, OK 73127 with the registered agent Corporation Service Company, located at 10300 Greenbriar Place, Oklahoma City, OK 73159. It owns a rental property identified as Summit at Rockwell Apartments, located at 905 N Rockwell, Oklahoma

City, OK 73127, and contracted with Pratum for property management services. *See* Summit at Rockwell Apartments Management Contract attached as Exhibit 9. Upon information and belief, having researched publicly available filings and records for OKRWV, LP, its partners are citizens of the State of Texas and the company has no contacts with the State of Maryland, where Pratum is a citizen.

17. KS Elm Street Apartments, LP is a company incorporated in Texas with its principal place of business located at 1980 Post Oak Blvd., Suite 2020, Houston, TX 77056, with the registered agent Alex Von Fischer located at 1980 Post Oak Blvd., Suite 2020, Houston, TX 77056. It owns a rental property identified as Summit at Elm Street Apartments located at 1605 Elm St. Marysville, KS 66508, and contracted with Pratum for property management services. *See* Summit at Elm Street Management Contract attached as Exhibit 10. Upon information and belief, having researched publicly available filings and records for KS Elm Street Apartments, LP, its partners are citizens of the State of Texas and the company has no contacts with the State of Maryland, where Pratum is a citizen.

18. TXAN, LP is a company incorporated in Texas with its principal place of business located at 1980 Post Oak Blvd., Suite 2020, Houston, TX 77056, with the registered agent Corporation Service Company, located at 211 E. 7th Street, Suite 620, Austin, TX 78701. It owns a rental property identified as Summit at Abilene North Apartments, located at 2411 N. Willis St., Abilene, TX 79603, and contracted with Pratum for property management services. *See* Summit at Abilene Management Contract attached as Exhibit 11. Upon information and belief, having researched publicly available filings and records for TXAN, LP, its partners are citizens of the State of Texas and the company has no contacts with the State of Maryland, where Pratum is a citizen.

19. TXNRM, LP is a company incorporated in Texas with its principal place of business located at 1980 Post Oak Blvd., Suite 2020, Houston, TX 77056, with the registered agent Corporation Service Company, located at 211 E. 7th Street, Suite 620, Austin, TX 78701. It owns a rental property identified as Summit at North Ridge Manor Apartments, located at 4155 Maida Road, Beaumont, TX 77708, and contracted with Pratum for property management services. *See* Summit at North Ridge Manor Management Contract attached as Exhibit 12. Upon information and belief, having researched publicly available filings and records for TXNRM, LP, its partners are citizens of the State of Texas and the company has no contacts with the State of Maryland, where Pratum is a citizen.

20. Eastwood Terrace and Oakhill Plaza, LLC is a company incorporated in Texas with its principal place of business located at 1980 Post Oak Blvd., Suite 2020, Houston, TX 77056, with the registered agent Corporation Service Company, located at 211 E. 7th Street, Suite 620, Austin, TX 78701. It owns a rental property identified as Summit at Orton Hill, located at 2817 E. J Campbell Blvd., Nacogdoches, TX 75961, and contracted with Pratum for property management services. *See* Summit at Orton Hill Management Contract attached as Exhibit 13. Upon information and belief, having researched publicly available filings and records for Eastwood Terrace and Oakhill Plaza, LLC, its members are citizens of the State of Texas and the company has no contacts with the State of Maryland, where Pratum is a citizen.

21. TXCVA, LP is a company incorporated in Texas with its principal place of business located at 1980 Post Oak Blvd., Suite 2020, Houston, TX 77056, with the registered agent Corporation Service Company, located at 211 E. 7th Street, Suite 620, Austin, TX 78701. It owns a rental property identified as Summit at Central Village Apartments, located at 910 W. 28th Street, Plainview, TX 79072, and contracted with Pratum for property management services. *See* Summit

at Central Village Management Contract attached as Exhibit 14. Upon information and belief, having researched publicly available filings and records for TXCVA, LP, its partners are citizens of the State of Texas and the company has no contacts with the State of Maryland, where Pratum is a citizen.

22. TXUG, LP is a company incorporated in Texas with its principal place of business located at 1980 Post Oak Blvd., Suite 2020, Houston, TX 77056, with the registered agent Corporation Service Company, located at 211 E. 7th Street, Suite 620, Austin, TX 78701. It owns a rental property identified as Summit at Unique Garden Apartments, located at 5388 Village Ln., Fort Worth, TX 76119, and contracted with Pratum for property management services. *See* Summit at Unique Garden Management Contract attached as Exhibit 15. Upon information and belief, having researched publicly available filings and records for TXUG, LP, its partners are citizens of the State of Texas and the company has no contacts with the State of Maryland, where Pratum is a citizen.

23. TXLS, LP is a company incorporated in Texas with its principal place of business located at 1980 Post Oak Blvd., Suite 2020, Houston, TX 77056, with the registered agent Corporation Service Company, located at 211 E. 7th Street, Suite 620, Austin, TX 78701. It owns a rental property identified as Summit at Lexington Square Apartments, located at 2008 N. I-35, Gainesville, TX 76240, and contracted with Pratum for property management services. *See* Summit at Lexington Square Management Contract attached as Exhibit 16. Upon information and belief, having researched publicly available filings and records for TXLS, LP, its partners are citizens of the State of Texas and the company has no contacts with the State of Maryland, where Pratum is a citizen.

24. TXVW, LP is a company incorporated in Texas with its principal place of business located at 1980 Post Oak Blvd., Suite 2020, Houston, TX 77056, with the registered agent Corporation Service Company, located at 211 E. 7th Street, Suite 620, Austin, TX 78701. It owns a rental property identified as Summit at the Villages of Waco Apartments, located at 1100 N. 6th St., Waco, TX 76707, and contracted with Pratum for property management services. *See* Summit at Villages of Waco Management Contract attached as Exhibit 17. Upon information and belief, having researched publicly available filings and records for TXVW, LP, its partners are citizens of the State of Texas and the company has no contacts with the State of Maryland, where Pratum is a citizen.

25. TXIMA, LP is a company incorporated in Texas with its principal place of business located at 1980 Post Oak Blvd., Suite 2020, Houston, TX 77056, with the registered agent Corporation Service Company, located at 211 E. 7th Street, Suite 620, Austin, TX 78701. It owns a rental property identified as Summit at Independent Missionary Apartments, located at 6607 Prino Road, Hitchcock, TX 77563, and contracted with Pratum for property management services. *See* Summit at Independent Missionary Management Contract attached as Exhibit 18. Upon information and belief, having researched publicly available filings and records for TXIMA, LP, its partners are citizens of the State of Texas and the company has no contacts with the State of Maryland, where Pratum is a citizen.

26. TXMA, LP is a company incorporated in Texas with its principal place of business located at 1980 Post Oak Blvd., Suite 2020, Houston, TX 77056, with the registered agent Corporation Service Company, located at 211 E. 7th Street, Suite 620, Austin, TX 78701. It owns a rental property identified as Summit at Mirasol Apartments, located at 1226 N. Masters Drive, Dallas, TX 75217, and contracted with Pratum for property management services. *See* Summit at Mirasol

Management Contract attached as Exhibit 19. Upon information and belief, having researched publicly available filings and records for TXMA, LP, its partners are citizens of the State of Texas and the company has no contacts with the State of Maryland, where Pratum is a citizen.

27. TXPHV, LP is a company incorporated in Texas with its principal place of business located at 1980 Post Oak Blvd., Suite 2020, Houston, TX 77056, with the registered agent Corporation Service Company, located at 211 E. 7th Street, Suite 620, Austin, TX 78701. It owns a rental property identified as Summit at Prince Hall Village Apartments, located at 934 W. 14th Street, Port Arthur, TX 77640, and contracted with Pratum for property management services. *See* Summit at Prince Hall Management Contract attached as Exhibit 20. Upon information and belief, having researched publicly available filings and records for TXPHV, LP, its partners are citizens of the State of Texas and the company has no contacts with the State of Maryland, where Pratum is a citizen.

## JURISDICTION & VENUE

28. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because this action arises under the RICO Statute, 18 U.S.C. § 1964(c).

29. This Court further has subject-matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 as there is complete diversity between the Parties, since Plaintiff is a citizen of Maryland under the statute, Defendants are, upon information and belief, citizens of Texas, Oklahoma, Mississippi, Arkansas, New York, or California under the statute, and the amount in controversy exceeds $75,000.

30. The Court has personal jurisdiction over the Defendants because not only are the majority of companies incorporated in or have their principal place of business in Texas, but upon information and belief, their parent companies and individual owner(s) are incorporated and

domiciled in Texas. Moreover, the intentional conduct that is the subject of this lawsuit precipitating the breaches of contracts, tortious interference, and unjust enrichment through which Pratum has been damaged were all perpetrated from Texas.

31. Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391, as a substantial part of the events giving rise to the claims asserted herein occurred in this District and/or were otherwise directed to this District, and Defendants are subject to jurisdiction in this District.

## FACTUAL BACKGROUND

### **Formation of Business Relationship and Contractual Periods**

32. In February 2025, Zieben entered into negotiations with Pratum about taking over property management services for certain residential rental properties that he owned through a multitude of companies under his control.

33. Ultimately, this amounted to twenty different properties that Pratum contracted to provide property management services for that are owned – directly or indirectly – by Lee Zieban through the Zieben Defendants ("Zieben Properties"). *See* Exhibits 1–20. The management contracts appended as Exhibits 1-20 shall hereinafter be collectively referred to as "Management Contracts."

34. Zieben signed each of the Management Contracts on behalf of the Zieben Defendants and was the designated recipient for any notices under the agreement. *Id.* at § 20(A).

35. Upon information and belief, in addition to being a managing member for each of the individual building ownership companies, Zieben also owns and controls ZG Real Estate Holdings, Ltd. and ZG Real Estate Management Group, LLC, which have ownership interests and control the operations of the Zieben Properties.

36. On March 10, 2025, the Parties confirmed the terms of their business relationship by executing certain Management Contracts that provided for Pratum to take over management of

two properties, Geyer Springs and Summit at Valley Heights. *See* Exs. 1 & 2. Both of the aforementioned contracts had an initial term of one year. *Id.*

37. Prior to contracting with Pratum to manage these properties, both were underperforming for years, to the point that Zieben Defendants were under pressure from their financial lenders about their operations. For example, Zieben Defendants were required to provide monthly reports to lenders regarding the occupancy, collections status, and maintenance issues for Geyer Springs and Summit at Valley Heights due to the fact that each of these properties were underperforming assets.

38. On June 16, 2025, Pratum and Zieben Defendants contracted for Pratum to formally take over management responsibilities for seventeen more of the Zieben Properties. *See* Exs. 4-20. Each of the aforementioned contracts had an initial term of three years. *Id.*

39. On September 5, 2025, Pratum contractually agreed to take on management for the last of the Zieben Properties, Pecan Village. *See* Ex. 3. The aforementioned contract had an initial term of three years. *Id.*

40. Zieben directed Pratum to take over management responsibilities for the Zieben Properties on expedited bases because of serious issues resulting from Zieben Defendants' prior mismanagement of the properties. Pratum discovered it was actually the third property management company Zieben Defendants utilized over only two and a half years.

41. Zieben Defendants previously contracted with Royal American and then a company named Capstone immediately before turning their portfolio over to Pratum. Moreover, it was Capstone that terminated the relationship with Zieben Defendants in May, 2025, leaving the Zieben Properties in desperate need of coverage and with significant issues stemming from poor prior management.

42. For instance, Zieben identified in a text message to Pratum CEO Shah Alam ("Mr. Alam") on August 8, 2025, that if Pratum did not take over Pecan Village, it would put Owners in a very bad position and they would probably lose the property. *See* Zieben and Alam 8/8/2025 Text Exchange attached as Exhibit 21. Further, as an example of the short notice through which Owners requested Pratum's services and the desperate needs of corrective management services, Zieben requested at 4:08 pm on Friday, August 8, 2025, that the management agreement be created and executed for Pecan by the next business day, Monday, August 11, 2025, when Pratum would then take over management of the property. *Id.*

43. Pratum ordinarily receives and was contractually entitled to "at least a sixty (60) day timeframe between management agreement execution and commencement of a management agreement term in order to prepare for the proper transition, takeover of management, and implementation of the full suite of management services at a property." *See* Exs. 1–20 at §3(A)(III).

44. The express purpose of this transition period was to identify necessary reforms and to allow Pratum to fully assume operational control of the respective Zieben Properties, including control over on-site employees, vendors, and compliance obligations. *See id.* (noting that in requesting to waive the transition period, "Owner understands that Agent's ability to conduct a proper transition, takeover, and implementation of all property management services to take effect upon commencement of the management agreement term will be impacted.").

45. Despite the difficulties posed by Zieben Defendants' urgent need and the prior state of the Zieben Properties, Pratum worked diligently to coordinate the transitions and correct the preexisting deficiencies across the portfolio. *See* Zieben and Alam 6/27/25 Text Exchange attached as Exhibit 22.

**Zieben Defendants' Failure to Pay for Agreed Upon Additional Personnel for Zieben Properties**

46. In taking over management of the Zieben Properties, the Parties agreed upon an aggressive plan through which Pratum could stabilize management of the Zieben Properties, which would carry additional costs beyond the designated contractual management fees.

47. Zieben Defendants agreed that Pratum's affiliate company – Pratum Compliance – would staff various positions at Zieben Properties in furtherance of the agreed upon plan. This staffing was necessary due to the poor operational condition that the Zieben Properties were in when Pratum took over management. Indeed, the Zieben Defendants were unable to fill vacant on-site management positions which created an operation emergency that Pratum stepped in to fill on an emergency basis.

48. Zieben Defendants agreed to these services and the costs associated therewith, which were in addition to the fees in the Management Contracts. Notwithstanding this fact, the Management Contracts also provided Pratum with sole discretion to utilize such additional staffing as it may deem necessary, to be compensated as a property expense. *See* Exs. 1–20 at §3(J)(III).

49. Zieben Defendants' understanding of and consent to the additional staffing costs is memorialized in text messages between the Parties. On February 27, 2025, Zieben texted Mr. Alam verifying that Pratum would provide supplemental personnel for Zieben Properties to fill positions until they stabilized operations. *See* Zieben and Alam 2/27/2025 Text Exchange attached as Exhibit 23. Their services would be provided at the cost of their hourly or annual salary regularly paid for by Pratum, without the application of any additional charges related to the personnel except for potential travel expenses in providing this service accommodation. *Id.* Zieben even requested that these Pratum employees begin working on behalf of Zieben Properties

before management agreements were finalized because of how desperate the situation was with one property's on-site team having departed entirely. *Id.*

50. On March 2, 2025, Zieben reiterated to Mr. Alam that Pratum would be fully reimbursed for its personnel working on behalf of Zieben Properties on this emergency basis. *See* Zieben and Alam 3/2/2025 Text Exchange attached as Exhibit 24.

51. Despite the Parties' mutual understanding, Zieben's explicit request for this accommodation, his continued assurances that Pratum would be compensated, and the express contractual obligation that Zieben Defendants were responsible to pay for such additional personnel, Zieben Defendants never reimbursed Pratum as required. The months of staffing Pratum provided amounted to approximately $100,000 above the regular management fees Pratum earned, which remains due and owed.

52. Beyond the emergency staffing personnel, Zieben Defendants also requested that Pratum hire a Vice President of Social Services who would be expected to prioritize running social service programs for the Zieben Properties. *See* Zieben and Alam 3/1/25-3/7/25 Email Exchange attached as Exhibit 25.

53. Zieben Defendants represented to the U.S. Department of Housing and Urban Development ("HUD") that it provided such social services to tenants in order to secure approval for their intended rental increase amount. Zieben Defendants did not previously offer social services until coordinating with Pratum for the hiring and use of this new Vice President.

54. The Management Contracts establish that Zieben Defendants are responsible for the cost of all services and personnel necessary for the administration of Zieben Properties, whether or not their cost is specifically set forth in the Budget. *See* Exs. 1–20 at §4(F). While the Management Contracts already confirmed Zieben Defendants' responsibility to pay for this personnel, the

Parties' documented specific terms verifying the necessity of this additional service outside regular management duties and how Pratum would be compensated for hiring and making such employee available for the Zieben Properties. *See* Ex. 25. Zieben Defendants were to cover $150,000 towards Pratum's salary obligations for this new-hire position, which was expected to cover eight to nine months of their salary. *Id.* Further, the Parties agreed that this Pratum employee would not work exclusively on Zieben Properties, although they would prioritize working for those properties among their duties for Pratum. *Id.*

55. On October 27, 2025, Zieben texted Mr. Alam that he no longer considered the Vice President's role necessary for the Zieben Properties once a current deliverables project was completed. *See* Zieben and Alam 10/27/2025 Text Exchange attached as Exhibit 26. Pratum reiterated that payment was outstanding per their agreement for hiring this employee, but Zieben gave no reply regarding the unpaid funds. *Id.*

56. Despite the clear terms that the Zieben Defendants were responsible for paying an additional $150,000 for these staffing services described above, no payment has been made.

**Unpaid Set-Up Fees**

57. Zieben Defendants failed to pay the contractually agreed upon $15,000 Set-Up costs applicable to all but three of the Zieben Properties. *See* Exs. 4–20 at §9(A). The only properties for which this cost was not applicable were Geyer Springs, Summit at Valley Heights, and Pecan Village. *See* Exs. 1–3.

58. Every agreement signed on June 16, 2025, when Pratum took over property management for the majority of Zieben's portfolio, required Zieben Defendants to pay this $15,000 charge to cover Pratum's initial due diligence review, software build, and on-boarding. *See* Exs. 4–20 at

§9(A). The set-up fee was to be paid over three equal installments during the first three months of services. *Id.*

59. Further, any unpaid charges due from Zieben Defendants to Pratum carry interest at a rate of one and a half percent per month once more than thirty days past due. *See* Exs. 4–20 at §9(E). Therefore, on the initial $85,000 overdue set-up fee portion, there is $14,025 in additional interest accrued, for the second tranche of unpaid setup fees, $12,750 in interest accrued, and for the third set, $11,475 in interest accrued.

60. In total, Zieben Defendants have failed to pay $293,250 for the unpaid set-up fees, inclusive of interest that has accrued on the unpaid balance as of the date of this filing. Interest will continue to accrue on this balance until it is paid. *See* Exs. 4–20 at §9(A)(E).

**Zieben Defendants Fail To Comply with Accounting and Budget Obligations**

61. Zieben Defendants also breached their obligations under the Management Contracts by failing to cooperate with Pratum in its financial budgeting and oversight over the Zieben Properties. Under the Management Contracts, Pratum was required to prepare annual budgets for the Zieben Properties, which Zieben Defendants then modified or approved. *See* Exs. 1–20 at §6(A)(I).

62. Rather than work collaboratively to confirm an appropriate budget for 2025, when Pratum assembled and presented a budget for the remainder of the year, Zieben Defendants insisted on proceeding without any budget, contrary to the Management Contracts.

63. Further, Zieben Defendants neglected to approve the budgets Pratum assembled for 2026 for the Zieben Properties despite repeated requests that Pratum made for such approval.

64. The absence of an annual budget hinders Pratum's ability to perform its management role. By not having a clear financial forecast, it is very difficult for Pratum to maintain the necessary

funds to pay vendors and to put aside the funds necessary to pay management fees. This lack of fiscal clarity harms the financial performance of each of the Zieben Properties.

65. Zieben Defendants' noncompliance with budgetary obligations persisted on both a micro and macro level. Pratum was required to maintain the books for each of the Zieben Properties on a monthly basis, which accounted for rents received and the operational costs associated with maintaining the respective property. *See* Exs. 1–20 at §7(C).

66. However, at various times, Zieben Defendants specifically directed Pratum not to work on budgets and that they would handle it internally. *See* Zieben and Alam 5/27/2025 Text Exchange attached as Exhibit 27.

67. On other occasions, Zieben Defendants demanded that Pratum hold reporting periods open to allow occupancy across the Zieben Properties to appear higher and to improve the recorded rental revenue and delinquency data. *See* Zieben and Alam 7/1/2025 Text Exchange attached as Exhibit 28.

68. When Pratum sent reports to Zieben Defendants, Zieben often gave comments back seeking revisions to the numbers that delayed finalizing the reports.

69. Zieben Defendants professed that this remedial booking assisted their efforts to sell the Zieben Properties, however, such directives compromised Pratum's month-to-month management and improperly impacted reporting about the Zieben Properties to government entities.

70. The Zieben Properties operated under HUD oversight, requiring strict guidelines to be met, which Zieben Defendants frequently compromised with their directives to hold open reporting periods, thereby harming Pratum's otherwise great record in the industry for managing HUD related properties and meeting compliance duties.

**Zieben Defendants' Failure to Maintain Funds in Property Operating Accounts**

71. Zieben Defendants' unwillingness to utilize a budget and avoidance of regular reporting schedules constricted Pratum's oversight and management abilities and aided in the Zieben Defendants' ability to comingle – and ultimate diversion – of funds from Zieben Properties.

72. Despite the difficulties directed by Zieben Defendants, Pratum continued in its commitment to proper management of the Zieben Properties, which precipitated concerning discoveries.

73. Zieben Defendants must maintain specific operating accounts for each of the Zieben Properties, which hold rents and subsidies that are collected ("Operating Accounts"). *See* Exs. 1–20 at §5.

74. The funds contained in the Operating Accounts are to be used to fund the operations at each of the specific Zieben Properties, including: "Administrative, Payroll, Marketing & Advertising, Computer & Software, Property Management Systems, Training, On-Boarding, Maintenance and Repairs, Utilities, Licenses, Taxes, Insurance and Debt Service." *Id.* at §5(A)(I). The Operating Accounts also must maintain the funds necessary to pay Pratum all fees it is owed under the Management Contracts. *Id.* at §5(A)(II).

75. Zieben Defendants must maintain a sufficient balance in the Operating Account for each property to pay all operating expenses and to pay Pratum its management fee affiliated with that property. *Id.* at §5(A)(V).

76. Zieben Defendants are restricted from unilaterally moving funds from the Operating Accounts and must give Pratum access to the Operating Accounts with authority to pay bills therefrom and to provide written notice to Pratum for any additional payments that Zieben Defendants direct to be made from the Operating Accounts. *Id.* at §5(A)(IV).

77. If an Operating Account ever has insufficient funds for the operating expenses and disbursements, then Zieben Defendants are required to deliver sufficient funds to cover all designated operating expenses and disbursements within three business days from being notified by Pratum of the deficiency. *Id.* at §5(A)(V).

78. However, contrary to these clear parameters, Zieben Defendants restricted Pratum's access to the Operating Accounts to "read only." This meant Pratum could not access and direct the distribution of funds necessary to manage the Zieben Properties in violation of the Management Contracts.

79. Worse, on many occasions Pratum discovered that Zieben withdrew large sums of money, sometimes totaling in the hundreds of thousands of dollars, from the Operating Accounts for various Zieben Properties without any clear or justifiable purpose and without the requisite notice and explanation in advance to Pratum.

80. The total amount of the funds that are at issue and unaccounted for, across all the Zieben Properties in 2025, could exceed several million dollars.

81. This is problematic in a number of ways, most notably, that it leaves the Zieben Properties with insufficient cash on hand to pay expenses, including those owed to Pratum and other vendors. There are likewise significant questions as to whether the funds are being withdrawn for a proper purpose, and one that complies with Federal and State law.

82. On December 19, 2025, Pratum's Senior Vice President of Operations, Charlie Blackmon, summarized these serious issues through a call with Zieben Defendants' CFO and a follow up email directly to Zieben. *See* Blackmon and Zieben 12/19/2025 Email Exchange attached as Exhibit 29. He detailed Zieben Defendants' history of impermissibly withdrawing large sums from

across Zieben Properties and the negative impact it caused to operations, Pratum's ability to effectively manage the portfolio, and the liability it presented from multiple vendor claims. *Id.*

83. Throughout Pratum's management of the Zieben Properties, Pratum frequently followed up with Zieben Defendants about funding discrepancies and serious deficiencies in the Operating Accounts. *See* Zieben and Alam 05/09/2025 Text Exchange attached as Exhibit 30; Zieben and Alam 11/14/2025 Text Exchange attached as Exhibit 31; Zieben and Alam 12/30/2025 Text Exchange attached as Exhibit 32.

84. From early in the Parties' relationship, Pratum raised concerns about Zieben Defendants' failure to make payments to Pratum and to property vendors, identifying how that also contributes to difficulties with leasing and attracting tenants. *See* Ex. 30.

85. The Zieben Defendants' financial mismanagement became so severe that, not only were vendors going unpaid, but payroll obligations for the Pratum on-site management staff would often get missed. These problems persisted even after Zieben assured such problems were rectified. *See* Ex. 32; Blackmon and Zieben 01/02/2026 Email Exchange attached as Exhibit 33.

86. Pratum's requests for explanations on the extreme and inexplicable deficiencies were met with incoherent excuses or outright ignored. *See* Ex. 32.

**Zieben Defendants' Financial Mismanagement Caused Disputes with Vendors and Harmed Pratum's Reputation**

87. Zieben Defendants' failure to properly fund the Zieben Properties, its improper withdrawals from Operating Accounts, its delays to Pratum's funding requests, and its denials of direct vendor collection efforts exposed Pratum to liability and compromised the company's strong industry reputation.

88. On several occasions, Pratum has been sued in conjunction with the Zieben Defendants' failure to comply with its financial obligations to vendors. Pratum has also received demand

letters threatening litigation on additional vendor disputes stemming from Zieben Defendants' non-payment to various vendors.

89. Such formal legal claims regarding unpaid debts for Zieben Properties were initiated by at least the following entities or individuals: Intersolutions, Impact Flooring, Spectrum, Black Plumbing, Carrer Strategies, Hoover Slovacek LLP, and Monique Lawrence totaling collectively more than $350,000. Some of these disputes date back to services rendered under Zieben Defendants' prior management company, Capstone, yet still remain unresolved by Zieben Defendants and subsequently exposed Pratum to the potential claims.

90. Under the Management Contracts, Zieben Defendants must notify Pratum of all suits and claims for which Pratum may be held jointly liable and to indemnify Pratum from such claims. *See* Exs. 1–20 at §10.

91. However, Zieben Defendants already failed to provide complete notice of these claims, and on several occasions Pratum discovered the existence of disputes through its own inquiries.

92. Zieben Defendants have also made no effort to resolve these claims. This failure is a material breach of the Management Contracts.

93. The financial and legal issues that have arisen out of the Zieben Defendants' failure to pay vendors not only place Pratum in legal jeopardy; they also cause significant reputational harm to the company.

94. Pratum operates in jurisdictions throughout the country and does business with countless vendors in relation to its property management business. Pratum's strong reputation in the industry is an asset that allows it to obtain preferential pricing terms from vendors, which benefits Pratum's clients.

95. Zieben Defendants are very familiar with this as they have done business with Pratum for approximately a year across multiple states and sought the company out because of these advantages and its strong reputation.

96. However, Pratum's ability to obtain favorable rates and consistent service from vendors has diminished because of its recent history of nonpayment through association with the Zieben Properties. One such company, Career Strategies, identified that they put Pratum's account with their company on hold because of Zieben Defendants' nonpayment. Another, Cintas, refused to work with Pratum on an unaffiliated property that Pratum manages because of Zieben Defendants' nonpayment to them.

97. Similarly, Zieben Defendants' failure to fund payroll obligations to Pratum staff at the Zieben Properties, or compensate for the additional emergency personnel provided, inhibits Pratum's ability to retain necessary staff or provide similar emergency accommodations to clients in the future.

98. The Zieben Defendants' unpaid invoices, lawsuits, and obstruction of proper management of the Zieben Properties causes significant harm to Pratum's reputation, its business, and its ability to compete in the marketplace.

**Zieben Defendants' Transition of Properties to New Management Company Breaches and Ultimately Improperly Terminates Agreement**

99. Since December 2025, Zieben repeatedly communicated through phone calls and emails with Mr. Alam and Mr. Blackmon his intent to transition all Zieben Properties to a new property management company, Asset Living.

100. During such calls Zieben never expressed any deficiencies in Pratum's performance or breach of its contractual obligations which would justify a "for cause" termination.

101. The Management Contracts provide that:

> If Owner terminates this Agreement at any time between the execution of this Agreement (including before the commencement of its term) and before the end of the Initial Term or any Renewal Term Year for any reason other than for a breach by Agent, or if Agent terminates this Agreement for a breach by Owner, then in such event Owner shall by obligated to pay Agent as liquidated damages an amount equal to the total management fee earned by Agent, as determined under Section 9, for the calendar month immediately preceding the month in which the notice of termination is given to Agent or to Owner, multiplied by the number of months and/or portions thereof remaining from the termination date until the end of the Initial Term.

*See* Exs. 1–20 at §14(D).

102. At all times, Pratum's representatives reiterated that the amounts they are due under the contract for services rendered and for any termination must be covered by Zieben Defendants in the event of any separation.

103. Zieben requested, without offering any justification, that Mr. Alam simply waive the termination fees applicable under the contract, but Pratum rejected this request.

104. On February 4, 2026, Zieben Defendants transmitted a letter vaguely asserting general and immaterial breaches of the Management Contracts by Pratum and purporting to initiate the contractual thirty-day cure period by which Pratum could rectify material breaches or the contract could then be terminated for cause with no termination fee due. *See* Exs. 1–20 at § 14(B)(I)(a).

105. The letter failed to identify any particular conduct by Pratum with regard to specific Zieben Properties that constituted violations of Pratum's duties as the property manager. The ambiguity left Pratum wholly unable to correct any perceived deficiencies – as it was contractually entitled to – and transparently represented a pretextual attempt to avoid the termination fees for the transition of property management services Zieben already initiated.

106. On February 13, 2026, in further violation of Pratum's rights as the exclusive agent for the Zieben Properties and its ability to cure any perceived breaches to preserve its management of the

portfolio, Zieben confirmed his intent to Pratum to transition to Asset Living, effective April 1, 2026, and demanded that Asset Living be granted access to Zieben Properties' data.

107. On February 23, 2026, Zieben informed Pratum that he already communicated with government representatives for HUD and the Southwest Housing Compliance Corporation ("SHCC") about his intended transition of his portfolio to Asset Living and included numerous Asset Living employees in his discussions with government representatives, while excluding Pratum from the conversation. *See* Zieben and Alam 2/24/2026 Email Exchange attached as Exhibit 34.

108. On February 24, 2026, Pratum provided a formal response to Zieben's letter regarding the alleged breaches of contract, expressing in detail why none of the issues referenced by Zieben Defendants constituted Pratum's breach of the Management Contracts and reiterating Pratum's commitment to manage the Zieben Properties. Pratum further demanded that if Zieben Defendants asserted any breach by Pratum, it must be clarified in sufficient detail to provide Pratum with a reasonable opportunity to cure, and that Pratum intended to cure any actual material breach that may be identified.

109. Rather than engage in good faith with Pratum to identify and enable rectification of any perceived breaches, Zieben moved ahead with plans to transition the Zieben Properties to Asset Living while the cure period for Pratum remained open and Pratum retained exclusive rights as the property manager for all Zieben Properties.

110. On March 4, 2026, before the cure period expired, Zieben sent messages to on-site employees throughout his portfolio – who were officially Pratum employees – notifying them about his intent to transition the Zieben Properties and that they could stay on with Asset Living.

111. On March 6, 2026, Zieben Defendants reiterated that they were terminating the relationship with Pratum effective April 1, 2026.

112. Zieben Defendants previously breached the contracts with Pratum, communicated that they were terminating the contracts without cause, manufactured a pretextual effort to avoid the termination fee that failed to enumerate any actual breach by Pratum, and deprived Pratum of its right to cure any actual breach of the contract. As such, Pratum is entitled to its termination fee for all Zieben Properties in which there is an active and unexpired Management Contract. This group of properties includes every property except for Geyer Springs and Summit at Valley Heights. All other Zieben Properties would carry a termination period of 27 months until the expiration of their initial term at the end of June, 2028, with the exception of Pecan Village, for which the initial term runs through September, 2028.

113. The termination fee applicable for the Zieben Properties totals $2,828,848.32 based on the last month's invoice prepared for Zieben Defendants. That number is subject to change as the final figure will be determined from charges for March, 2026.

## CAUSES OF ACTION

### Count I – Breach of Contract

114. Pratum hereby incorporates all of the allegations in the previous paragraphs as if fully set forth herein.

115. Pratum entered into twenty Management Contracts for the Zieben Properties with Zieben Defendants, which constitute valid contracts between the Parties. *See* Exs. 1–20.

116. Pratum complied with all of its obligations under the contracts.

117. Zieben Defendants failed to pay amounts due under the Management Contracts to Pratum and vendors, appropriately fund Operating Accounts as required, approve budgets, or notify and indemnify Pratum for third-party claims regarding the Zieben Properties.

118. Despite being provided with repeated notices about these issues and how they violated Zieben Defendants' contractual obligations, Zieben Defendants continued to breach the contracts.

119. As an actual and proximate cause of Zieben Defendants' breach of the Management Contracts, Pratum has suffered monetary damages totaling at least $4,071,894.71 with interest continuing at a rate of one and a half percent per day.

120. Pratum is further entitled to reasonable attorneys' fees and costs of this suit under the Management Contracts to recover the amounts due. *See* Exs. 1–20 at §24(C).

<u>Count II – Tortious Interference with Contracts</u>

121. Pratum hereby incorporates all of the allegations in the previous paragraphs as if fully set forth herein.

122. To the extent Zieben, ZG Real Estate Holdings, LTD., and ZG Real Estate Management Group, LLC, are not bound by the Management Contracts, they were aware of all such contracts entered into by Pratum for managing the Zieben Properties.

123. Zieben, ZG Real Estate Holdings, Ltd., and ZG Real Estate Management Group, LLC, interfered with the performance of those contracts through the misappropriation of funds from Operating Accounts, retention of Asset Living to replace Pratum for property management of the Zieben Properties, communications with government entities about the intended transition, and communications to Pratum's employees about management activities at the individual properties which conflicted with directives and contractual obligations for Pratum.

124. Zieben Defendants are further aware that Pratum has contracts with third-party vendors for the provision of various maintenance services and contracts for property maintenance at numerous other properties around the country beyond the Zieben Properties.

125. Zieben Defendants' failure to timely pay invoices to Pratum, including payroll obligations to Pratum's on-site staff and failure to pay vendors knowingly damaged Pratum's reputation in the industry and ability to obtain the continuing services of various vendors or favorable pricing.

126. Zieben Defendants knew that their misconduct would cause Pratum to lose their contracts for the Zieben Properties, their favorable contract terms with third-party vendors, and ultimately their contracts for property management at other properties around the country stemming from the reputational and business harm Zieben Defendants perpetrated.

127. As a result of Zieben Defendants' purposeful actions, Pratum has suffered and continues to suffer damages in the form of monetary losses.

Count III – Tortious Interference with Prospective Business Opportunities

128. Pratum hereby incorporates all of the allegations in the previous paragraphs as if fully set forth herein.

129. Zieben Defendants know that Pratum regularly engages in business with third-party vendors for the provision of various maintenance services and does business with property owners around the country to provide management services.

130. Zieben Defendants' failure to timely pay invoices to Pratum, including payroll obligations to Pratum's on-site staff and failure to pay vendors knowingly damaged Pratum's reputation in the industry and ability to obtain the continuing services of various vendors or favorable pricing.

131. Zieben Defendants knew that their misconduct would cause Pratum to lose business opportunities for managing properties in the future without their favorable contract terms with

third-party vendors and their damaged reputation in the industry, including with regard to their compliance with HUD and other government regulations.

132. As a result of Zieben Defendants' purposeful actions, Pratum has suffered and continues to suffer damages in the form of monetary losses.

<u>Count IV – Unjust Enrichment</u>

133. Pratum hereby incorporates all of the allegations in the previous paragraphs as if fully set forth herein.

134. Pratum provided emergency on-site staffing for the Zieben Properties and hired an additional Vice President to perform work on behalf of the Zieben Properties.

135. These services inured to the benefit of Zieben Defendants and with their knowing directive that such personnel be utilized on their behalf.

136. To the extent the use of such employee resources by Pratum is not a contractual expense, or the benefits extended to entities and individuals who are not the direct owners of the businesses and liable under those contracts, Pratum is entitled to reimbursement of the costs affiliated with this personnel that it otherwise would not have incurred or would have been able to designate these resources to other business goals.

137. Zieben Defendants have been unjustly enriched by utilizing these employees without providing the compensation due to Pratum for such services.

138. Pratum has been damaged by Zieben Defendants' failure to pay at least $250,000 for the use of this personnel while Zieben Defendants wrongfully retain the benefits of the work provided.

<u>Count V – Fraud</u>

139. Pratum hereby incorporates all of the allegations in the previous paragraphs as if fully set forth herein.

140. Zieben Defendants contracted with Pratum for property management services across their portfolio and were responsible for timely paying all funds due to Pratum for the rendering of such services and to third-party vendors maintaining the Zieben Properties who could hold Pratum – not simply Zieben Defendants – liable for defaulting on their invoices.

141. Zieben Defendants must maintain specific Operating Accounts for each of the Zieben Properties, which hold rents and subsidies that are collected. *See* Exs. 1–20 at §5.

142. The Management Contracts align with federal law, state law, and government regulations requiring that the funds contained in the Operating Accounts be used exclusively to fund the operations at each of the specific Zieben Properties, including: "Administrative, Payroll, Marketing & Advertising, Computer & Software, Property Management Systems, Training, On-Boarding, Maintenance and Repairs, Utilities, Licenses, Taxes, Insurance and Debt Service." *Id.* at §5(A)(I). The Operating Accounts also must maintain the funds necessary to pay Pratum all fees it is owed under the Management Contracts. *Id.* at §5(A)(II).

143. Zieben Defendants frequently executed wire transfers moving funds out of or between Operating Accounts for individual properties without disclosing the intended transfer or providing appropriate justification for the disbursal in contravention of federal law, state law, and the Management Contracts, including, for example, a $500,000 transfer and a $300,000 transfer from the Summit at Orton Hill Operating Account on December 5, 2025, and December 9, 2025, respectively.

144. Pratum representatives, including Mr. Alam and Mr. Blackmon directly addressed such wrongful transfers with Zieben, as well as Zieben Defendants' CFO, by phone and email repeatedly over the course of Pratum's representation. This included, for example, a phone call and email exchange commemorating that discussion on December 19, 2025. *See* Ex. 33.

145. When Pratum confronted Zieben Defendants about these large and improper wire transfers, their explanations were vague, inconsistent, and refuted by the actual records available to Pratum.

146. Such repeated and deliberate mishandling of funds and omissions or misrepresentations as to the reasons therefore when Zieben Defendants had a duty to disclose any intended transfers to Pratum demonstrated an intent to defraud Pratum.

147. Zieben Defendants' diversion of funds regularly left Zieben Properties with deficient funds in their individual Operating Accounts to cover payroll obligations and other debts owed to Pratum for their management services and to third-party vendors which could hold Pratum jointly liable for nonpayment.

148. Zieben Defendants' failure to timely pay invoices to Pratum, including payroll obligations to Pratum's on-site staff and failure to pay vendors caused direct financial harm to Pratum.

149. Further, Zieben Defendants' financial misdeeds knowingly damaged Pratum's reputation in the industry and ability to obtain the continuing services of various vendors or favorable pricing, hurting its operations and other business contracts or future opportunities.

150. Zieben Defendants illicitly took these funds for their individual benefit and attempted to obfuscate such misconduct through improper bookkeeping activities for the Zieben Properties.

151. Zieben Defendants' unauthorized wire transfers, misuse of funds, and misrepresentations to Pratum to conceal their conduct constitute fraud.

152. Zieben Defendants' wire transfers moved funds across state lines and the diversion of assets from the Operating Accounts prevented their intended use as part of interstate commerce for Pratum's services and that of third-party vendors. As such, the fraud has a nexus to interstate commerce.

153. As a result of Zieben Defendants' purposeful actions, Pratum has suffered and continues to suffer damages in the form of monetary losses.

154. Zieben Defendants' conduct has been extreme, willful and malicious, thereby supporting an award of punitive damages.

Count VI – Civil RICO

155. Pratum hereby incorporates all of the allegations in the previous paragraphs as if fully set forth herein.

156. Zieben Defendants operate as a collective enterprise with subsidiary and parent companies that control the Zieben Properties – twenty residential property rental properties – as part of a single portfolio.

157. Zieben Defendants contracted with Pratum for property management services across their portfolio and were responsible for timely paying all funds due to Pratum for the rendering of such services and to third-party vendors maintaining the Zieben Properties who could hold Pratum – not simply Zieben Defendants – liable for defaulting on their invoices.

158. Zieben Defendants must maintain specific Operating Accounts for each of the Zieben Properties, which hold rents and subsidies that are collected. *See* Exs. 1–20 at §5.

159. The Management Contracts align with federal law, state law, and government regulations requiring that the funds contained in the Operating Accounts be used exclusively to fund the operations at each of the specific Zieben Properties, including: "Administrative, Payroll, Marketing & Advertising, Computer & Software, Property Management Systems, Training, On-Boarding, Maintenance and Repairs, Utilities, Licenses, Taxes, Insurance and Debt Service." *Id.* at §5(A)(I). The Operating Accounts also must maintain the funds necessary to pay Pratum all fees it is owed under the Management Contracts. *Id.* at §5(A)(II).

160. Zieben Defendants frequently transferred funds out of or between Operating Accounts for individual properties without disclosing the intended transfer or providing appropriate justification for the disbursal in contravention of federal law, state law, and the Management Contracts.

161. Zieben Defendants illicitly took these funds for their individual benefit and attempted to obfuscate such misconduct through improper bookkeeping activities for the Zieben Properties.

162. When Pratum confronted Zieben Defendants about these large and improper transfers, their explanations were vague, inconsistent, and refuted by the actual records available to Pratum.

163. Zieben Defendants' unauthorized transfers and use of funds constitute mail fraud, wire fraud, theft, and/or other illegal acts.

164. Zieben Defendants' diversion of funds regularly left Zieben Properties with deficient funds in their individual Operating Accounts to cover payroll obligations and other debts owed to Pratum for their management services and to third-party vendors which could hold Pratum jointly liable for nonpayment.

165. Zieben Defendants' failure to timely pay invoices to Pratum, including payroll obligations to Pratum's on-site staff and failure to pay vendors caused direct financial harm to Pratum.

166. Further, Zieben Defendants' financial misdeeds knowingly damaged Pratum's reputation in the industry and ability to obtain the continuing services of various vendors or favorable pricing, hurting its operations and other business contracts or future opportunities.

167. As a result of Zieben Defendants' purposeful actions, Pratum has suffered and continues to suffer damages in the form of monetary losses.

168. Pratum is entitled under 18 U.S.C. § 1964(c) to bring a civil suit against Zieben Defendants for this misconduct.

169. Pratum is entitled to treble damages and reasonable attorneys' fees and costs of this suit to recover the amounts due. 18 U.S.C. § 1964(c).

PRAYER FOR RELIEF

Wherefore, as a result of the aforementioned conduct described herein and as to all counts, Plaintiff respectfully requests that the Court enter judgment in its favor and award the following relief:

1. Judgment entered in Pratum's favor and against the Defendants;
2. Compensatory damages in the amount of actual and liquidated damages as may be proven at Trial, at least equal to Five Million Dollars ($5,000,000.00);
3. Punitive damages for Defendants' fraudulent conduct and treble damages under 18 U.S.C. § 1964(c);
4. That Pratum be awarded pre-judgment and post-judgment interest in the amount of one and a half percent (1.5%) per month;
5. Award of costs and reasonable attorneys' fees as provided by statute and contract as associated with this action;
6. All other relief that the Court may deem just, equitable, and proper.

**Demand for Jury Trial**

Pratum respectfully requests and demands a jury trial on all issues so triable.

Respectfully submitted this 20th day of March, 2026.

*/s/ Jake L. Ramsey*
Jake L. Ramsey
Texas State Bar No. 24083705
Offit Kurman, P.A.
700 N. Pearl St., Suite 1610
Dallas, TX 75201
Office: (214) 377.7879
Fax: (214) 420.9891
E-mail: jake.ramsey@offitkurman.com

Ian G. Thomas (*pro hac vice forthcoming*) (D.C. Bar No. 1021680)
Alexander Rogosa (*pro hac vice forthcoming*) (D.C. Bar No. 1044198)
Offit Kurman, P.A.
1701 Pennsylvania Avenue, NW, Suite 200
Washington, DC 20006
Office: (202) 393.8100
Fax: (202) 393.2104
Email: ithomas@offitkurman.com
Alex.rogosa@offitkurman.com

**ATTORNEYS FOR PLAINTIFF**